1 | RUTH ARLENE MUSSER-LOPEZ, in pro per
individually and doing business as
2 | ARCHAEOLOGICAL HERITAGE ASSOCIATION,
River Branch. Short title "RiverAHA"
3 | 420 E Street
Needles, CA 92363
4 | 760/885-9374  *NO FAX*
*Office @ River AHA.Com*
5 |

6 | IN THE UNITED STATES DISTRICT COURT

7 | CENTRAL DISTRICT OF CALIFORNIA

8 |

9 | "RiverAHA" – RUTH ARLENE MUSSER-  CV 12  No.  01471 MMM
LOPEZ, in pro per individually and
10 | doing business as ARCHAEOLOGICAL  ) PETITION FOR WRIT OF MANDATE
HERITAGE ASSOCIATION, River Branch,  ) AND COMPLAINT FOR DECLARATORY RELIEF
Plaintiff,  ) 36 C.F.R. § 800.2(b) (1995),
11 |  ) 16 U.S.C. § 470w(7)(D) (1994),
v.  ) 43 U.S.C. §1701  et. seq
12 |  ) 42 U.S.C. §4321 et.seq.
Ken Salazar, SECRETARY OF THE UNITED  ) and 5 U.S.C. §701–706
13 | STATES DEPARTMENT OF THE INTERIOR;  ) (C.C.P. §§ 1085 and 526; Pub.
UNITED STATES DEPARTMENT OF THE  ) Res. Code § 21168.5; Article 5 of the
14 | INTERIOR (USDI); BUREAU OF LAND  ) San Bernardino County Code of
MANAGEMENT (BLM-CSO); COUNTY OF SAN  ) Ordinances)
15 | BERNARDINO; COUNTY OF SAN BERNARDINO  )
BOARD OF SUPERVISORS; and DOES 1  )
16 | through 50, inclusive,  ) Assigned for all purposes to:
 )
17 | Respondents/Defendants  ) Judge
 )
18 | SANTA MARGARITA WATER DISTRICT, a  ) Dept:
California Water District; CADIZ,  )
19 | INC., a Delaware Corporation; and  ) Related Cases: DELAWARE TETRA
FENNER VALLEY MUTUAL WATER COMPANY, a  ) TECHNOLOGIES,INC., a Delaware
20 | California nonprofit mutual benefit  ) Corporation, Petitioner/Plaintiff,
corporation; and ROES 51 through  ) VS. COUNTY OF SAN BERNARDINO; COUNTY
21 | 60, inclusive  ) OF SAN BERNARDINO BOARD OF
 ) SUPERVISORS
22 | Real Parties in Interest  )
23 |

24 | This Petition for Peremptory Writ of Mandate and Complaint for

25 | Declaratory Relief ("Petition") is brought by Petitioner/Plaintiff Ruth

26 | Musser-Lopez, individually and doing business as the Archaeological Heritage

27 | Association, River Branch (herein "RiverAHA"), based on Section 106 of the

28 | National Historic Preservation Act of 1966 as amended, the Federal Land

Policy and Management Act (herein, "FLPMA"), 43 U.S.C. Sec. 1701 et seq., the

PETITION FOR INJUNCTION, WRIT OF MANDATE PURSUANT TO SEC. 106 OF NHPA AND FLPMA – 1

National Environmental Policy Act of 1968 (herein, "NEPA"), 42 U.S.C. Sec. 4321 et. seq., the Administrative Procedure Act, 5 U.S.C. Sec 701-706 and executive orders, regulations and rules promulgated to implement these statutes. It is also based on California State law, Code of Civil Procedure sections 526 et seq., Code of Civil Procedure section 1085, and Public Resources Code section 21168.5. It is also based on Article 5 of the San Bernardino County Code of Ordinances, the California Environmental Quality Act ("CEQA," codified as Public Resources Code §§ 21000 et seq.), and the State CEQA Guidelines ("CEQA Guidelines," promulgated as title 14 of the California Code of Regulations, §§ 15000 et seq.).

The decisions and actions complained about are all for an unlawful purpose not allowed under the Federal Land Policy and Management Act, which would among other damages irreparably harm and affect significant federal historic cultural properties potentially eligible for the National Register of Historic Places, all the while failing to invoke federal procedures or federal review including consultation with the Advisory Council on Historic Preservation. The decisions and actions pertain to federal historic cultural properties simultaneously located on both federal public lands within the California Desert Conservation Area (herein, "CDCA") and unincorporated land within the County of San Bernardino, and are made by defendant, Ken Salazar, Secretary of the United States Department of the Interior (herein "Secretary Salazar" or "Secretary" and other federal officials of the United States Department of the Interior (herein, USDI") and the Bureau of Land Management (herein, "BLM") an agency within the USDI, County of San Bernardino ("County") and the County of San Bernardino Board of Supervisors ("Board") (collectively, "Respondents"), and involves Real Parties in Interest Cadiz, Inc. ("Cadiz"), the Santa Margarita Water District ("SMWD"), and the Fenner Valley Mutual Water Company ("FVMWC") (collectively, "Real Parties").

1

2                                    **INTRODUCTION**

3

4         1. Plaintiff challenges the validity and adequacy of the California

5    Environmental Quality Act (CEQA) Environmental Impact Report (EIR) for the

6    so-called Cadiz Valley Water Conservation, Recovery, and Storage Project.

7    This Petition for a peremptory writ of mandate seeks to enjoin defendants

8    from processing any and all applications or permits enabling the Cadiz

9    Project based upon a premature and improper environmental review represented

10   by the challenged CEQA EIR and to compel Respondents to set aside or rescind

11   the approval and certification of the CEQA EIR document in question and to

12   take no action to reapprove or certify the CEQA EIR document until such time

13   as Respondents fully comply with Federal, State and Local law including:

14   Section 106 of the National Historic Preservation Act of 1966 as amended and

15   its promulgating regulations (herein "NHPA" or "Section 106"); the Federal

16   Land Policy and Management Act (herein, "FLPMA"), 43 U.S.C. §1701 et seq.;

17   the National Environmental Policy Act of 1968 (herein, "NEPA"), its

18   Guidelines and implementing regulations, 42 U.S.C. §4321 et. seq; the

19   Administrative Procedure Act, 5 U.S.C. Sec 701-706; and executive orders,

20   regulations and rules promulgated to implement these statutes; Code of Civil

21   Procedure sections 526 et seq.; Code of Civil Procedure section 1085; and

22   Public Resources Code section 21168.5; the California Environmental Quality

23   Act ("CEQA," codified as Public Resources Code §§ 21000 et seq.); the State

24   CEQA Guidelines ("CEQA Guidelines," promulgated as title 14 of the California

25   Code of Regulations, §§ 15000 et seq.); the County's Desert Groundwater

26   Management Ordinance (San Bernardino County Code of Ordinances, Article 5,§§

27   33.06551 et seq.); and all other applicable environmental laws, ordinances,

28   rules, regulations and procedures. [A true and correct copy of the CEQA

1   document EIR is attached hereto as Exhibit A and incorporated herein by this

2   reference.]

3      2. RiverAHA's Petition also seeks preliminary and permanent injunctions

4   against Respondents and their agents enjoining them from commencing

5   activities and negotiations unless and until Respondents comply with their

6   mandatory duties under Section 106 of NHPA, FLMPA and its implementing

7   regulations and under NEPA, the NEPA Guidelines, and all other applicable

8   environmental laws, rules, regulations and procedures as noted above.

9      3. The approval and certification of the CEQA document was unlawful for

10  four reasons:

11  (a) By certifying the CEQA document, the Santa Margarita Water District

12  (herein "SMWD") acting under color of State Law, improperly, constituted a

13  discretionary action that is part-and-parcel of Respondents' and Real

14  Parties' plans to proceed with the Santa Margarita Water District's Cadiz

15  Valley Water Conservation, Recovery, and Storage Project ("Cadiz Project").

16  The approval of the CEQA document occurred at a time when Respondents under

17  color of federal and state law and in their official capacity had meaningful

18  information about certain component activities of the Cadiz Project being

19  situated in the California Desert Conservation Area (herein "CDCA") on

20  federal historic properties potentially eligible for the National Register of

21  Historic Places, within a use area of the CDCA that is inconsistent with and

22  does not provide for the type of activities associated with groundwater

23  mining proposed as the Cadiz Project.

24     4. By refusing, failing or neglecting to identify the Cadiz Project as a

25  federal undertaking as defined in NHPA, the defendants did egregiously,

26  willfully, negligently and wrongfully conduct themselves in an endeavor to

27  avoid federal review and procedure consistent with Section 106 of NHPA and

28  FLPMA ignoring the potential and certain impacts of the proposed actions upon

1  eligible and potentially eligible National Register of Historic Places
2  properties.   In doing so, the Defendants (a) failed to identify a federal
3  undertaking under Section 106 of the National Historic Preservation Act
4  (herein "Section 106");   (b) failed to conduct an adequate review of the
5  existing cultural resources data base and failed to conduct government-to-
6  government consultation with pertinent Native American tribes resulting in a
7  failure to identify the federal significance of cultural and traditional
8  cultural places potentially eligible for inclusion on the National Register
9  of Historic Places; (c) failed to consult with the Advisory Council on
10  Historic Preservation and provide them with the opportunity to make findings
11  regarding eligibility of cultural properties in harms way and review
12  treatment plans for properties potentially eligible for National Register of
13  Historic Places in harms way; (d) failed to comply with National
14  Environmental Policy Act of 1968 (herein, "NEPA"), 42 U.S.C. §4321 et. seq.,
15  by not evaluating the impact of a federal action associated with the Cadiz
16  Project, upon potentially eligible cultural resource properties, which
17  federal action would be defined as the cultural resource treatment plans
18  under Section 106 required to alleviate impact upon potentially eligible
19  historic properties; (e) failed to comply with Federal Land Policy and
20  Management Act (herein, "FLPMA"), 43 U.S.C. §1701 et seq., by ignoring the
21  prohibition of unlawful water mining activities which may impact federal
22  cultural properties and resources without federal approvals through a
23  California Desert Conservation Plan amendment; AND (f) also acted in
24  violation of the Administrative Procedure Act, 5 U.S.C. Sec 701-706 and
25  executive orders, regulations and rules promulgated to implement the statutes
26  above.

27      5.   Such conduct has restricted the Plaintiff's valid preemptive uses of
28  the cultural, educational, recreational and other resources in the CDCA and

1  valid existing rights such as the right to participate in a determination of

2  whether water mining of east Mojave groundwater is a use of the CDCA that the

3  public would want or consider.

4

5  **SURROUNDING CIRCUMSTANCES**

6  6. PLAINTIFF Ruth Musser-Lopez established the Archaeological Heritage

7  Association ("RiverAHA") in 2010 to document, preserve and protect natural

8  and cultural heritage places and landscapes in its service area through a

9  program of documentation, monitoring, stewardship, education and

10  interpretation. As RiverAHA assumed the business, entitlements and the

11  identified service area of its predecessor sole source proprietorship,

12  PARDners Consulting, the standing relationship with the East Mojave and

13  Colorado River Valley region extends from 1986. The River Branch office of

14  AHA (hereafter "RiverAHA") is located in Needles, California; however the

15  service area in which it documents, patrols and monitors cultural resources

16  and archaeological sites is the Lower Colorado River and the adjacent East

17  Mojave Desert and has a standing stewardship relationship with cultural

18  resources in these areas, many of which are linked to prehistoric, historic

19  and contemporary springs and lake shorelines. RiverAHA's service vicinity is

20  located within the Area of Potential direct and indirect Effect (hereafter,

21  "APE") described in the "Cadiz Valley Water Conservation, Recovery, and

22  Storage Project Environmental Impact Statement" (hereafter "EIR"). RiverAHA

23  relies upon public water resources including springs and wells within the APE

24  of the Groundwater Management, Monitoring and Mitigation Plan in Exhibit B of

25  the EIR for use during its reconnaissance and monitoring activities. The

26  springs in the APE are a natural component of many of the archaeological

27  sites within RiverAHA's service area and as such, are monitored as an element

28  of the archaeological sites in RiverAHA's stewardship program; springs are

1 | also included in RiverAHA's multiple resource-monitoring program.

2 |     7. Plaintiff has knowledge that an application was made by the Cadiz

3 | Corporation to the County of San Bernardino for a permit to proceed on the

4 | Cadiz Project. The County has statutory authority over approval of the

5 | permit and the project may not proceed without the required permission from

6 | the County. The project involves the extraction of groundwater from both the

7 | Cadiz and the Fenner Valley aquifer system, thus must comply with County's

8 | Desert Groundwater Management Ordinance (San Bernardino County Code of

9 | Ordinances, Article 5, §§ 33.06551 et seq.) or with a County approved

10 | Groundwater Management, Monitoring and Mitigation Plan (herein, "GMMMP"). A

11 | proposed GMMMP was dated (November 29, 2011) was included in the Draft EIR as

12 | an Appendix, (Appendix B) though it is truly the linchpin of the entire

13 | environmental analysis, without which the Cadiz Project could not be exempted

14 | from compliance with the County Desert Groundwater Ordinance. The County

15 | ceded Lead Agency status for the Cadiz Project to SMWD in June 2011, with the

16 | County to be involved only as a "Responsible Agency." The County has

17 | announced their intent to vote on the Groundwater Management, Monitoring and

18 | Mitigation Plan as if the impact of approval and implementation of the GMMMP

19 | has been fully reviewed under the EIR prepared by SMWD. Thus, it is the GMMMP

20 | that constitutes the undertaking as well as the project as described in the

21 | main body of the EIR.

22 |     8. Since the County has ceded its authority to certify the Final EIR to

23 | SMWD, it is implied, rightly or wrongly, that the certification of the EIR by

24 | SMWD constitutes certification of the EIR by the County. Though the legal

25 | authority of the County to cede certification authority has been questioned

26 | in another matter before the State court (Tetra vs. County of San

27 | Bernardino et al.), this complaint assumes that the certification stands,

28 | that the Groundwater Management, Monitoring and Mitigation Plan has been

Service List

1

2   KEN SALAZAR, SECRETARY OF THE INTERIOR   *Defendant*
3   1849 C Street, NW   *Land and Property manager of Federal Land; Property*
    Washington, D.C.   *at issue in this case (California Desert Conservation Area).* *public*

4   UNITED STATES DEPARTMENT OF THE INTERIOR/BLM   *Defendant BLM   Defendant*
5   Civil Process Clerk   *Represents Agency responsible for managing*
    1400 U.S. Courthouse   *land & properties involved in case*
6   312 N. Spring Street
    Los Angeles, CA 90012

7   UNITED STATES DEPARTMENT OF THE INTERIOR/BLM   *Defendant Federal Defendants*
8   Donald B. Verilli, Jr.   *Represents Agency responsible*
    United States Attorney General   *for managing land & properties*
9   U.S.Departmentof Justice   *involved in the case/matter.*
    950 Pennsylvania Avenue, NW
    Washington, DC 20530-0001

10  UNITED STATES DEPARTMENT OF THE INTERIOR/BLM/CSO   *Defendant*
11  California State Office   *Federal Agency responsible for managing*
    2800 Cottage Way, Suite W-1623   *land and properties involved*
    Sacramento, CA 95825-1889   *in this matter.*

12  COUNTY OF SAN BERNARDINO   *Local Permitting agency for project*
13  385 North Arrowhead Avenue   *aft to be located on land and*
    San Bernardino, CA   *properties at issue in this case*

14  BOARD OF SUPERVISORS   *County of   elected*
15  COUNTY OF SAN BERNARDINO   *Local management elected*
    c/o Clerk of the Board   *officials responsible for approving*
16  385 North Arrowhead Ave.   *the permit for project to be*
    San Bernardino, CA   *conducted on land & properties at*

17  SANTA MARGARITA WATER DISTRICT   *issue in this*
    Santa Margarita Water District Administration Office   *matter.*
18  26111 Antonio Parkway   *public*
    Rancho Santa Margarita, CA 92688   *Lead Agency of*
19  CADIZ, INC.   *California Environmental Quality Act*
20  550 South Hope Street   *project review and*
    Suite 2850   *certifying agency, Real*
    Los Angeles, CA 90071   *Party of Interest*

21  FENNER VALLEY MUTUAL WATER COMPANY
22  550 South Hope Street   *Real Party of Interest,*
    Suite 2850   *Project Proponent*
    Los Angeles, CA 90071

23

24                                      *Real Party of Interest*
25                                      *shell company formed*
26                                      *for purpose of proposed*
27                                      *project.*

28

[Summary of pleading] - 1

1   submitted to environmental review under state law and that the statute of
2   limitations is running on the right to protest and petition the court to
3   redress    grievances    concerning    the    adequacy    of    the    EIR.
4       9.    However, while the County has the statutory authority to approve the
5   Groundwater Management, Monitoring and Mitigation Plan (GMMMP) and issue a
6   permit for the extraction of groundwater, the County is legally obliged to
7   comply with federal law in reviewing the impact a permitted project might
8   have upon federal public resources and requiring necessary federal procedural
9   review   prior to issuing such permits.   Commonly, a joint EIR and Federal
10  Environmental Impact Statement (herein, "EIS") is completed where both state
11  and federal review of a project are necessary. But this was not the case for
12  the Cadiz Project.    SMWD, in preparing and certifying the EIR failed to
13  invoke federal procedure, identify or disclose the statutory requirements and
14  necessary approvals required by law under the authority of the USDI along
15  with its agency, the BLM and the Advisory Council on Historic Preservation
16  for undertakings that would impact significant cultural resources on federal
17  lands    within    the    project's    area    of    potential    impact.
18      10.   The entire process has been purposefully convoluted in an attempt to
19  obfuscate the need for federal review and to make it difficult for the public
20  to navigate through.   That the need for review of the project by the federal
21  land managers at the BLM was in question is evidenced by the inclusion in the
22  EIR of a Solicitor's Opinion linked to the subject of whether federal review
23  of the Cadiz Project is necessary. This opinion was included in the EIR
24  appendix and cited as the reason why a federal review of the project was not
25  necessary.   Plaintiff has knowledge and therefore believes that other
26  conference(s) occurred between the defendant/respondent and other parties of
27  interest concerning the need for federal review and it was assumed based upon
28  communications that have not been made known to the public and from this

1  solicitor's opinion, that a federal review under NEPA was not necessary for
2  the project including the 42 mile long segment of federal land granted to the
3  railroad for a right-of-way (herein "ROW") by the Department of the Interior-
4  -as long as the proposed activities furthered a railroad purpose.  The
5  opinion however, failed to address or distinguish the issue of the project's
6  impact upon significant federal historic cultural properties or that the
7  presence of these properties within the Area of Potential direct and indirect
8  Effect  (APE), particularly within and straddling the ROW corridor,
9  constituted a federal "undertaking" under Section 106 of NHPA nor does it
10 address the existence of other laws such as the Antiquities Act of 1906, in
11 place protecting the numerous federal antiquities and, or, significant
12 cultural properties either recorded in or straddling the right-of-way on
13 federal property.  These properties are described in Appendix G1 of the EIR,
14 a volume that was made available to the public only upon special request.
15     11.  In delivering the Solicitor's Opinion, and by not communicating to
16 publicly and further orders, the USDI was by its action or inaction in
17 essence providing an approval to proceed on federal public land within the
18 railroad right-of-way without the need for an environmental review including
19 review under NHPA, FLPMA, and NEPA.  However, in delivering such an approval,
20 the USDI confirmed by inference that its approval to proceed is necessary.
21     12.  Under NHPA, the Advisory Council on Historic Preservation's (herein
22 "Council" or "Council's") current regulations define undertaking as: any
23 project, activity, or program that can result in changes in the character or
24 use of historic properties, if any such historic properties are located in
25 the area of potential effects. The 1992 amendments to NHPA defined an
26 undertaking stating that Federal agencies must comply with Section 106 when
27 the project, activity, or program is under the direct or indirect
28 jurisdiction of a Federal agency, and, or licensed, permitted, approved or

1 financially assisted by a Federal agency. Undertakings include new and

2 continuing projects, activities, or programs and any of their elements not

3 previously considered under Section 106 as per 16 U.S.C. § 470w(7) (1994).

4 In this case, given that the Cadiz Project would define its water project as

5 an enhancement to an existing railroad project already permitted by virtue of

6 a granted R-O-W, then the Cadiz Project would constitute a "continuing"

7 railroad project not previously considered under Section 106 as per 36 C.F.R.

8 § 800.2(o) (1995).

9     13. In other words, a Section 106 "undertaking" is not as narrowly

10 defined as an "action" under NEPA; many projects are submitted for federal

11 review under Section 106 of NHPA while at the same time exempted from NEPA

12 review. Range and railroad projects often fall into this category of

13 necessary federal approvals. Further, in 16 U.S.C. § 470w(7)(C) (1994)

14 Federal approval for non-Federal activities are also undertakings. Thus,

15 Section 106 encompasses approvals such as those for mining activities,

16 National Indian Youth Council v. Andrus, 501 F. Supp. 649 (D.N.M. 1980),

17 aff'd, 664 F.2d 220 (10th Cir. 1981) and railroad abandonments and exemptions

18 (Berkshire Scenic Ry. Museum v. Interstate Commerce Comm'n, 52 F.3d 378 (1st

19 Cir. 1995); Friends of Sierra R.R. v. Interstate Commerce Comm'n, 881 F.2d

20 663 (9th Cir. 1989), cert. denied, 493 U.S. 1093 (1990); Connecticut Trust

21 for Historic Preservation v. Interstate Commerce Comm'n, 841 F.2d 479 (2d

22 Cir. 1988)).

23     14. The courts have held that Section 106 of NHPA applies to all

24 unexecuted parts of a large project. Morris County Trust for Historic

25 Preservation v. Pierce, 714 F.2d 271 (3d Cir. 1983); Thompson v. Fugate, 347

26 F. Supp. 120 (E.D. Va. 1972). Indeed, courts have held that as long as there

27 is still an ability to influence the project, Section 106 applies. Vieux

28 Carré Property Owners, Residents & Assocs. v. Brown, 948 F.2d 1436 (5th Cir.

1   1991) (court states that it is impossible to pre-judge outcome of
2   consultation process). The Cadiz Project EIR proposes a two stage project,
3   the second stage or phase consists of a "water recovery and storage" for
4   which use of federal lands have been identified. Whenever an agency is to
5   approve funds in stages, courts have decided that Section 106 of NHPA applies
6   until the final approval is made. Morris County Trust for Historic
7   Preservation v. Pierce, 714 F.2d 271 (3d Cir. 1983); WATCH v. Harris, 603
8   F.2d 310 (2d Cir.), cert. denied, 444 U.S. 995 (1979).
9        15. The Federal agency may authorize the participation of non-Federal
10  entities in complying with the Council's preliminary requirements and in
11  considering historic resources during the planning of an undertaking.
12  However, the agency retains ultimate responsibility for Section 106
13  compliance; it may not simply "rubber-stamp" the work of other participants
14  (36 C.F.R. § 800.1(c)(1)(i) (1995); Citizens' Defense Fund v. Gallagher,
15  [1979] 9 Envtl. L. Rep. (Envtl. L. Inst.) 20,420 (D. Mont. Nov. 3, 1978)) as
16  the County has done by ceding certification authority to SMWD.
17       16. In one case, for example, the court found that the Federal Highway
18  Administration (FHWA) had improperly delegated to a State its NHPA
19  responsibilities for a highway project. Although the State could participate
20  in the review process, FHWA was responsible for the required studies,
21  reports, evaluation, and determinations of effect and, ultimately, for
22  compliance with Section 106 (Hall County Historical Soc'y v. Georgia Dep't
23  of Transp., 447 F. Supp. 741 (N.D. Ga. 1978)). Agencies often require
24  applicants for Federal licenses, permits, approvals or other assistance to
25  conduct various steps of the Section 106 process. El Rancho La Comunidad v.
26  United States, No. 90-113 (D.N.M. May 21, 1991); Illinois Commerce Comm'n v.
27  Interstate Commerce Comm'n, 848 F.2d 1246 (D.C. Cir. 1988), cert. denied, 488
28  U.S. 1004 (1989). However, the statutory language of Section 106, as well as

1  the Council's regulations, make it clear that Section 106 is a Federal agency

2  responsibility. Courts have determined that Federal agencies may not delegate

3  their own responsibilities to independently assess the environmental impact

4  of their actions or proposals subject to Federal agency approval.   (Id.)

5  Thus, Federal agency review under NEPA applies to Cadiz Project activities

6  including protective treatment plans that would potentially impact or affect

7  Section 106 cultural properties.   Indeed, Federal agencies are subject to

8  suit when they exclusively rely on applicants and do not independently ensure

9  that historic properties were properly considered;  such reliance on

10 applicants is at the Federal agency's own risk. El Rancho La Comunidad v.

11 United States, No. 90-113 (D.N.M. May 21, 1991) (Rural Electrification

12 Administration subject to suit when rural cooperative on which it relied

13 failed to properly carry out Section 106 obligations).

14     17.   The approval of the CEQA document occurred at a time when

15 Respondents under color of federal and state law and in their official

16 capacity had meaningful information about certain component activities of the

17 Cadiz Project being located on federal land also situated on historic

18 properties potentially eligible for the National Register of Historic

19 Places.   By refusing, failing or neglecting to identify the Cadiz Project as

20 a federal undertaking, the defendants did willfully, negligently and

21 wrongfully conduct themselves in an endeavor to avoid federal review under

22 Section 106 thereby failing to consider the impacts of the proposed actions

23 upon eligible and potentially eligible National Register of Historic Places

24 properties.

25     18. The fact of an undertaking, "water mining" that would impact cultural

26 properties protected under FLPMA by virtue of being located in FLPMA's

27 California Desert Conservation Area (CDCA), triggers review of the need to

28 amend FLPMA's CDCA Plan ("Desert Plan") since water mining is presently an

1   unlawful use of the CDCA and such use of the CDCA would be a change in the

2   Desert Plan that would impact said protected cultural properties. Indeed, in

3   an earlier 2002 rendition of virtually the same project, it had been

4   determined by the federal agencies, USDI, BLM, that a plan amendment was

5   required and such a plan amendment was under review, however since support

6   for the project was withdrawn by one of the previous project participants,

7   the Los Angeles Metropolitan Water District, the plan amendment was never

8   processed.

9        19. The difference in the two projects is the placement of a connecting

10  pipeline from the project well fields to the Colorado River Aqueduct (CRA) on

11  a historic railroad right of way on federal lands in the hope of using a

12  loophole in the law to avoid federal review.  While components of the project

13  are argued to be for legal railroad purposes (fire hydrants and vegetation

14  control along the railroad track) the larger project goal and purpose is not

15  for railroad use of the water resource that would be extracted from under

16  public federal lands, but instead for a presently unlawful purpose — water

17  mining, which all the while would also be harming federal cultural

18  resources.

19       20. Here, we have a dispute ripe for determination. RiverAHA is asking

20  the court for a determination and declaratory relief that federal cultural

21  historic properties are distinguished from other federal real property and

22  though located in a federal right of way where certain uses of real property

23  are exempt from federal review, the use of federal historic cultural

24  properties is not exempt. It is argued here that the federal historic

25  cultural properties within the railroad right of way must be distinguished

26  from the real property used by the railroad for railroad purposes, and that

27  while an exemption for use of the real property within the railroad right of

28  way for a water pipeline associated with water mining may be granted, no such

1  exemption exists for use of the federally protected cultural properties.

2      21. Further, Plaintiff has knowledge and reason to believe that one or

3  some significant federal historic properties, potentially eligible for the

4  National Register of Historic Places, straddle the railroad right of way

5  portion of the project area, and are straddling or partly on federal lands

6  outside of the railroad right of way project area. Since impact or harm to

7  part of a cultural property or archaeological site, harms or impact the whole

8  of the site, including the part on federal lands, federal review would be

9  required under Section 106 of NHPA also triggering the need for a Plan

10 Amendment under FLPMA since Federal properties in the CDCA would be affected.

11

12                            **PARTIES TO THIS PROCEEDING**

13     22. Ruth Musser-Lopez is the proprietor and principal of Archaeological

14 Heritage Association, River Branch ("RiverAHA") which is a business

15 registered as a Fictitious Business Name on file with the County of San

16 Bernardino. RiverAHA's principal office is located in Needles, California.

17 Ruth Musser-Lopez is a former Bureau of Land Management employee, who

18 participated in the development of the California Desert Plan, and served as

19 the BLM's east Mojave archaeologist for 8 years and briefly in the capacity

20 of Acting California Desert District's Archaeologist. In her private

21 capacity, she continues to operate a cultural resources management

22 consulting, monitoring, research, interpretive and education firm, RiverAHA,

23 with a focus on east Mojave cultural resources encompassing the current Cadiz

24 Project area.

25     23. Personally, and on behalf of RiverAHA, Musser-Lopez participated

26 in the review process for actions proposed to be conducted in the CDCA

27 pertaining to the Cadiz Project, attended meetings and hearings, wrote

28 petitions and letters to public officials including the federal defendants,

1   read and commented on the Draft and Final Environmental Impact Report.
2   Plaintiff's right to due process, to participate in a decision and to submit
3   comments on a Desert Plan Amendment and the impact of a prohibited use of the
4   CDCA, groundwater mining, upon significant federal cultural properties have
5   been denied by Defendants acting in concert to enable the unlawful use of the
6   CDCA while waiving legally required federal environmental review and due
7   process.

8       24. RiverAHA is informed and believes and thereon alleges that
9   Respondent United States of America through the Department of the Interior
10  (herein, "USDI") and Bureau of Land Management (herein, "BLM") is the manager
11  of public land included in the California Desert Conservation Area and is
12  responsible under the Federal Land Policy and Management Act, 43 U.S.C. §1701
13  et. seq ("FLMPA"), and specifically §1781 to enforce the provision and
14  directives of the California Desert Conservation Area Plan. The BLM was
15  established pursuant to the Reorganization Plan Number 3 of 1946 and has
16  broad responsibilities for the administration of public lands.

17      25. RiverAHA is informed and believes and thereon alleges that
18  Respondent Ken Salazar (herein, "Secretary" or "Secretary Salazar") is
19  Secretary of the USDI. As such he is charged with the duty of managing and
20  protecting the public lands within the CDCA and is responsible for the
21  actions of delegated officers of the Bureau of Land Management, ensuring the
22  implementation of the California Desert Conservation Area Plan and upholding
23  federal law, regulation and Executive Orders.

24      26. RiverAHA is informed and believes and thereon alleges that
25  Respondent UNITED STATES DEPARTMENT OF THE INTERIOR (herein "USDI") AND its
26  agency BUREAU OF LAND MANAGEMENT, specifically, the California State Office
27  of said agency (herein, "BLM-CSO") are agencies of the United States federal
28  government charged with the duty of managing and protecting the public lands

1  within the CDCA and are responsible for the actions of delegated officers and
2  employees of the USDI and BLM, ensuring the implementation of the California
3  Desert Conservation Area Plan and upholding federal law, regulation and
4  Executive Orders.

5      27. RiverAHA is informed and believes and thereon alleges that Respondent
6  County is a political subdivision of the State of California and a local
7  government organized and existing under the laws of the State of California.
8  The County has a duty to comply with County ordinances and with state law
9  requirements, including CEQA and the CEQA Guidelines, when considering
10  discretionary activities and land use regulatory actions such as the MOU and
11  the Cadiz Project.

12      28. RiverAHA is informed and believes and thereon alleges that Respondent
13  Board of Supervisors is the elected decision making body of the County that
14  is charged with complying with County ordinances and with state law
15  requirements, including CEQA and the CEQA Guidelines, when considering
16  discretionary activities and land use regulatory actions such as the MOU and
17  the Cadiz Project. Defendant's willful conduct resulted in monetary and other
18  damages to the Plaintiff as will be shown.

19      29. RiverAHA is informed and believes and thereon alleges that Real Party
20  in Interest Santa Margarita Water District is a California water district
21  based in south Orange County, California, and has assumed the role of the
22  Lead Agency of the Cadiz Project.

23      30. RiverAHA is informed and believes and thereon alleges that Real
24  Party in Interest Cadiz, Inc. is a Delaware Corporation based in Los Angeles,
25  California, and is one of the proponents of the Cadiz Project.

26      31. RiverAHA is informed and believes and thereon alleges that Real Party
27  in Interest Fenner Valley Mutual Water Company is a California nonprofit
28  mutual benefit corporation which was recently formed by Cadiz to be the Cadiz
Project's operator.

PETITION FOR INJUNCTION, WRIT OF MANDATE PURSUANT TO SEC. 106 OF NHPA AND FLPMA - 16

32. RiverAHA is ignorant of the true names and capacities of Respondents/Defendants sued herein as Does 1 through 50 and therefore sues those Respondents/Defendants by such fictitious names. RiverAHA is informed and believes and thereon alleges that each of the fictitiously-named Respondents/Defendants is in some manner responsible or liable for the events and happenings referred to herein, and that each such fictitiously named Respondent/Defendant caused injury and damage to RiverAHA as alleged in this Petition. RiverAHA will seek leave of Court to amend this Petition to allege the true names and capacities of such fictitiously-named Respondents/Defendants when the same are ascertained.

33. RiverAHA is ignorant of the true names and capacities of Real Parties in Interest sued herein as Roes 51 through 60 and therefore sues those Real Parties in Interest by such fictitious names. RiverAHA is informed and believes and thereon alleges that each the fictitiously-named Real Parties in Interest is in some manner responsible or liable for the events and happenings referred to herein, and that each such fictitiously named Real Parties in Interest caused injury and damage to RiverAHA as alleged in this Petition. RiverAHA will seek leave of Court to amend this Petition to allege the true names and capacities of such fictitiously-named Real Parties in Interest when the same are ascertained.

### JURISDICTION AND VENUE

34. This Court has jurisdiction over this action under 28 U.S.C. §1246 (United States as Defendant); 28 U.S.C. § 2201 (declaratory judgments); 28 U.S.C. 1361 (action in the nature of mandamus to compel officers or employees of the United States to perform a duty owed the plaintiffs); and 5 U.S.C. 701-706 (judicial review of federal administrative agency action). proceeding pursuant to California Code of Civil Procedure sections 1085 and 526 et seq., and CEQA, including but not limited to Public Resource Code section 21168.5. Venue in this Court is proper pursuant to Code of Civil

1   Procedure section 394, in that the Plaintiff and Respondents are located

2   within the County of San Bernardino.

3        35. Venue is proper in this judicial district pursuant to 28 U.S.C.

4   §1391(b) (1) and (2) and (e) because all defendants have official capacities

5   affecting the action giving rise to this claim, which claim arises here, and

6   the real property which is the subject of this action is situated here.

7   Further, Plaintiff's principal office is located within this judicial

8   district.

9

10                              **FIRST CAUSE OF ACTION**

11                        VIOLATON OF SECTION 106 OF NHPA

12       36. Defendants/Respondents failed to identify a federal "undertaking"

13   under Section 106 of the National Historic Preservation Act (herein "Section

14   106"). By law, the term "undertaking" as defined in NHPA for purposes of

15   Section 106 has been purposely distinguished from the meaning of the term

16   "federal action" as defined in NEPA. A federal undertaking has a much more

17   liberal application than does a federal action. The existence of a Federal

18   undertaking    is    the    trigger    for    Section    106    compliance.

19       37. In deciding cases involving alleged violations of the National

20   Historic Preservation Act, courts often focus their inquiry on several

21   threshold questions: 1) To whom does Section 106 apply? 2) To what sorts of

22   actions does it apply? 3) At what time does Section 106 apply? 4) To what

23   properties does Section 106 apply?

24       38. To whom does Section 106 apply? The 1992 amendments to NHPA

25   specifically defined the term undertaking as "a project, activity, or program

26   funded in whole or in part under the direct or indirect jurisdiction of a

27   Federal agency, including A) those carried out by or on behalf of the agency;

28   B) those carried out with Federal financial assistance; C) those requiring a

1  Federal permit, license, or approval; and D) those subject to State or local

2  regulation administered pursuant to a delegation or approval by a Federal

3  agency." 16 U.S.C. § 470w(7) (1994)

4      39.   The Council's current regulations define undertaking as: any

5  project, activity, or program that can result in changes in the character or

6  use of historic properties, if any such historic properties are located in

7  the area of potential effects. Federal agencies must comply with Section 106

8  when the project, activity, or program is under the direct or indirect

9  jurisdiction of a Federal agency, and, or licensed, permitted, approved or

10  financially assisted by a Federal agency. Undertakings include new and

11  continuing projects, activities, or programs and any of their elements not

12  previously considered under Section 106. 36 C.F.R. § 800.2(o) (1995)

13      40.   Within these parameters, there are several reasons why the

14  project   constitutes   a   federal   "undertaking"   under   Section   106.

15  a) The project is carried out with Federal financial assistance including the

16  Colorado River Aqueduct, access roads, utility lines, pipelines crossing

17  checker boarded properties, project monitoring and observation roads, steam

18  gages, future cluster wells, monitoring towers and other operations are on

19  federal land thus the project is a federal undertaking. In particular, the

20  application submitted for Cadiz identifies the need to use either public land

21  or an MWD land to pump water from the canal back to the Cadiz properties. The

22  current project action includes the use of public land in its review for

23  these purposes.

24  b) Plaintiff has knowledge and therefore believes that land has been

25  transferred and permits have been issued for use of public land by the Bureau

26  of Land Management to Cadiz Corporation or other entity linked with this

27  project, under the presumption of agriculture use, allowed in the Desert

28  Plan, when the actual use of the land was intended for eventual water

1  mining.    The change in use of the monitoring wells for monitoring water used

2  in  agriculture  operations  to  monitoring  water  used  in  water  mining

3  operations,  constitutes  a  new  use  of  monitoring  wells  and  therefore

4  associated with a new federal action.

5  b)    conveyance of land under the presumption of "agricultural" related use

6  when the cumulative effort and end goal was intended to be for water mining

7  and sales.

8  c) proposed use of public lands for installation of pumps on the second phase

9  of the project.

10  d)  use  of  public  lands  under  a  continuing  project,  railroad  R-O-W.

11  continuing project.

12  e)   significant federal historic properties straddling both sides of the ROW,

13  project APE (Area of Potential direct and indirect Effect), partially located

14  on federal lands outside of the ROW.

15  f)   The Department of the Interior, Bureau of Land Management, must agree or

16  give approval to the finding that all activities associated with the project

17  are  indeed  railroad  related  activities  excluding  the  project  from  review

18  under  the  National  Environmental  Policy  Act.  The  fact  of  the  Defendant

19  federal agencies/agents taking action to allow or approve the project to move

20  forward without federal review, constitutes a federal approval and a federal

21  undertaking under Section 106, though it has not been considered an "action"

22  as defined under NEPA.

23      41.   Federal approvals, permits, or licenses for non-Federal activities

24  are also undertakings. 16 U.S.C. § 470w(7)(C) (1994).   Thus, Section 106

25  encompasses approvals such as those for mining activities, National Indian

26  Youth Council v. Andrus, 501 F. Supp. 649 (D.N.M. 1980), aff'd, 664 F.2d 220

27  (10th Cir. 1981), railroad abandonments and exemptions (Berkshire Scenic Ry.

28  Museum v. Interstate Commerce Comm'n, 52 F.3d 378 (1st Cir. 1995); Friends of

1 | Sierra R.R. v. Interstate Commerce Comm'n, 881 F.2d 663 (9th Cir. 1989),
2 | cert. denied, 493 U.S. 1093 (1990); Connecticut Trust for Historic
3 | Preservation v. Interstate Commerce Comm'n, 841 F.2d 479 (2d Cir. 1988), and
4 | authorizations for activities or use of public lands under the jurisdiction
5 | of the Bureau of Land Management (Apache Survival Coalition v. United States,
6 | 21 F.3d 895 (9th Cir. 1994) and permits, such as the current County permit
7 | for the Cadiz Project, for private activities on Federal properties
8 | (Citizens' Comm. for Envtl. Protection v. United States Coast Guard, 456 F.
9 | Supp. 101 (D.N.J. 1978)).

10 | 42. In this project, the magnitude of the action is not railroad
11 | related. The vast magnitude of the action pertains to the vast quantity of
12 | groundwater that would be removed from beneath the surface of CDCA and
13 | National Park land in the east Mojave, specifically the Fenner and Lanfair
14 | Valley aquifers. The component of the project that is purportedly for
15 | railroad purposes is minimal and an afterthought to justify exemption from
16 | federal review of the project. The courts tend to look at such factors as
17 | the independent utility of the federally funded section, the stated purpose
18 | of the Federal action, and the magnitude of the Federal portion of the action
19 | in relation to the action as a whole. Village of Los Ranchos v. Barnhart,
20 | 906 F.2d 1477 (10th Cir. 1990), cert. denied, 498 U.S. 1109 (1991); People
21 | for Responsible Omaha Urban Dev. v. Interstate Commerce Comm'n, CV88-O-247
22 | (D. Neb. Feb. 14, 1989), aff'd, No. 89-1342 NE (8th Cir. Sept. 14, 1989), 889
23 | F.2d 1092 (mem.), cert. denied, 495 U.S. 957 (1990); Historic Preservation
24 | Guild v. Burnley, 896 F.2d 985 (6th Cir. 1989); Ringsred v. City of Duluth,
25 | 828 F.2d 1305 (8th Cir. 1987); Colorado River Indian Tribes v. Marsh, 605 F.
26 | Supp. 1425 (C.D. Cal. 1985) (Corps of Engineers must consider effect of
27 | private development even though only Federal involvement was issuance of
28 | permit for placement of riprap in river on development's boundary); River v.

1   Richmond Metro. Auth., 359 F. Supp. 611 (E.D. Va.), aff'd per curiam, 481

2   F.2d 1280 (4th Cir. 1973) (local government received Federal funds for

3   aspects of highway project, but no Federal involvement in the particular

4   segment of the highway system at issue; court held no "Federal undertaking");

5   But see Thompson v. Fugate, 347 F. Supp. 120 (E.D. Va. 1972) (segment of

6   beltway not segregable even though no Federal funds sought for segment).

7       43. The Section 106 process: Once a Federal agency has determined that

8   an undertaking exists, the Federal agency must begin the Section 106 process

9   by identifying any National Register-listed or -eligible properties in the

10  area of potential effects. 36 C.F.R. § 800.4 (1995). The Council on Historic

11  Preservation regulations define that area as "the geographic area or areas

12  within which an undertaking may cause changes in the character or use of

13  historic properties, if any such properties exist." 36 C.F.R. § 800.2(c)

14  (1995).

15      44. The area of potential effects may be and often is viewed broadly to

16  go beyond the project limits or permit area, Colorado River Indian Tribes v.

17  Marsh, 605 F. Supp. 1425 (C.D. Cal. 1985); New Hanover Township v. United

18  States Army Corps of Eng'rs, 796 F. Supp. 180 (E.D. Pa. 1992), vacated, 992

19  F.2d 470 (3d Cir. 1993) (court noted that project's effect on adjacent

20  historic properties would be considered).

21      45. The area of potential effects may include public or private property.

22  See Pacific Gas Transmission Co. v. Richardson's Recreational Ranch, 773 F.

23  Supp. 246 (D. Or. 1991), aff'd, 9 F.3d 1394 (9th Cir. 1993).

24      46. The NHPA expresses a general policy of supporting and encouraging the

25  preservation of prehistoric and historic resources for present and future

26  generations, directing Federal agencies to assume responsibility for

27  considering such resources in their activities. 16 U.S.C. §§ 470, 470-1

28  (1994). NHPA does not mandate preservation of such resources but requires

1  Federal agencies to consider the impact of undertakings on historic
2  properties. The statute sets forth a multifaceted preservation scheme to
3  accomplish these policies and mandates at the State and Federal levels.

4      47. Section 106 of NHPA as codified in  16 U.S.C. § 470f (1994).
5  provides that:  The head of any Federal agency having direct or indirect
6  jurisdiction over a proposed Federal or federally assisted undertaking in any
7  State and the head of any Federal department or independent agency having
8  authority to license any undertaking shall, prior to the approval of the
9  expenditure of any Federal funds on the undertaking or prior to the issuance
10  of any license, as the case may be, take into account the effect of the
11  undertaking on any district, site, building, structure, or object that is
12  included in or eligible for inclusion in the National Register. The head of
13  any such Federal agency shall afford the Advisory Council on Historic
14  Preservation established under Title II of this Act a reasonable opportunity
15  to comment with regard to such undertaking. Id.

16      48. Section 106 requires each Federal agency, or of a State or local
17  agency is acting pursuant to a delegation, then that agency is required to
18  comply with Section 106 as if it were a Federal agency (See 16 U.S.C. §
19  470w(7)(D) (1994); 36 C.F.R. § 800.2(b) (1995)) to do two things prior to
20  carrying out, approving financial assistance to, or issuing a permit for a
21  project that may affect properties listed or eligible for listing in the
22  National Register of Historic Places. First, the agency must consider the
23  impact of the project on historic properties. Second, the agency must seek
24  the Council's comments on the project. Section 106 originally applied only to
25  properties actually listed in the National Register; however, in 1976,
26  Congress extended its provisions to properties not yet listed but still
27  meeting the criteria. Pub. L. No. 94-422, § 201, 90 Stat. 1313 (1976).

28      49. Much of the Council's daily work involves commenting in response to

1   agency requests under Section 106. To administer these requests under the

2   authority granted by Congress, 16 U.S.C. § 470s (1994). The Council has

3   issued regulations to govern agencies' compliance with Section 106. 36 C.F.R.

4   pt. 800 (1995).  These regulations set forth procedures, known as the

5   "Section 106 process" that explain how Federal agencies must take into

6   account the effects of their actions on historic properties and how the

7   Council will comment on those actions. In 1992 Congress gave the Council

8   specific authority, in Section 211, to implement Section 106 in its entirety.

9   16 U.S.C. § 470s (1994). Prior to that time, some agencies interpreted the

10  Council's authority as being limited to implementing regulations only on how

11  the Council would comment on undertakings.  Section 106 applies to eligible

12  and listed properties.

13      50. A potentially eligible national register property, the Salt Song

14  Trail, was not identified and not addressed.  The trail can be shown to cross

15  the project area.  The impact upon the portion of the trail passing through

16  the project area could potentially impact the trail as a whole.  This is but

17  one example where Sec. 106 consultation with the advisory council is

18  necessary on the Cadiz Project to address impact to a potentially eligible

19  federal   national   register   of   historic   places   property.

20      51. Another threshold requirement in triggering the Section 106 process

21  is the historic property's listing or eligibility for listing in the National

22  Register of Historic Places. As noted above, prior to 1976, Section 106

23  applied only when an undertaking affected properties actually listed in the

24  National Register.  In several cases where the agency action occurred prior

25  to the 1976 amendments, the courts held NHPA inapplicable because the

26  affected properties were not listed in the National Register at the time of

27  the agency's approval of the expenditure of funds. Hart v. Denver Urban

28  Renewal Auth., 551 F.2d 1178 (10th Cir. 1977); South Hill Neighborhood Ass'n

RiverAHA v. SALAZAR ET AL.

1  v. Romney, 421 F.2d 454 (6th Cir. 1969), cert. denied, 397 U.S. 1025 (1970);

2  Save the Courthouse Comm. v. Lynn, 408 F. Supp. 1323 (S.D.N.Y. 1975); Saint

3  Joseph Historical Soc'y v. Land Clearance for Redev. Auth., 366 F. Supp. 605

4  (W.D. Mo. 1973). But see Committee to Save the South Green v. Hills, [1977] 7

5  Envtl. L. Rep. (Envtl. L. Inst.) 20,061 (D. Conn. Nov. 5, 1976) (agency must

6  comply with Council's regulations because property was eligible even though

7  agency need not comply with § 106 because property was not listed in National

8  Register).

9      52. Since the 1976 amendments, courts have required agencies to comply

10  with Section 106 when National Register-eligible properties are involved. The

11  Council's regulations define "eligible" as including both properties formally

12  determined as such by the Secretary of the Interior and all other properties

13  that meet the National Register criteria. 36 C.F.R. § 800.2 (e) (1995). An

14  eligible property, one that meets the criteria, may be submitted to the

15  Secretary for a formal determination of eligibility under separate

16  regulations. 36 C.F.R. §§ 63.2, 63.3 (1995).

17      53. The Secretary, acting through the National Park Service, determines

18  the eligibility of the property by a formal procedure. Most courts find that

19  a property need not be formally determined eligible to be considered an

20  "eligible property" for purposes of the application of Section 106.  Boyd v.

21  Roland, 789 F.2d 347 (5th Cir. 1986); Morris County Trust for Historic

22  Preservation v. Pierce, 714 F.2d 271 (3d Cir. 1983); Hough v. Marsh, 557 F.

23  Supp. 74 (D. Mass. 1982). See also Pueblo of Sandia v. United States 50 F.3d

24  856 (10th Cir. 1995); Colorado River Indian Tribes v. Marsh, 605 F. Supp.

25  1425 (C.D. Cal. 1985) (agency may not apply different standards of historic

26  review to properties listed in or officially determined eligible for the

27  National Register and properties that might be eligible but have not been

28  listed or officially determined to be eligible).

## First Claim for Relief

### VIOLATON OF SECTION 106 OF NHPA

53.    Plaintiff realleges, as if set forth in full herein, each and every allegation contained in paragraphs 36 through 53.5 inclusive.

53.1. Defendant Agencies BLM, USDI must do two things prior to approving a project that may affect properties listed or eligible for listing in the National Register of Historic Places. First, the agency must consider the impact of the project on historic properties. Second, the agency must seek the Council's comments on the project. (See 16 U.S.C. § 470w(7)(D) (1994); 36 C.F.R. § 800.2(b) (1995)) Defendants actions are inconsistent with Section 106 of NHPA requiring important legal and procedural requirements set for in Section 106 regulation.

53.2   Defendant federal agencies and agents violated Plaintiffs right to due process in actions required under the authority of Section 106 of NHPA by failing to provide the public with an opportunity to participate in the disposition of significant federal historic properties including a historic railroad line and associated sidings, an important Native American trail network, and other prehistoric archaeological sites.

53.3 Plaintiff further alleges as material fact that had the BLM, USDI or its agents, rightly identified a federal undertaking and the impact to federal property that the Cadiz Project would likely result in, a material difference would have resulted in the outcome of events which has resulted in considerable public and private expense and wide public concern and consternation, while the County engages in an effort to process a County permit for water mining/transfer in the CDCA, which application was made by the Cadiz Corporation.

1

2

3

4                        **Second Cause for Action**

5            VIOLATION OF THE FEDERAL LAND POLICY AND MANAGEMENT ACT

6

7        54.   Federal review of the project required under Section 106 of NHPA

8    triggers the need for a California Desert Conservation Area Plan Amendment

9    under FLPMA since Federal properties in the CDCA would be affected by a use,

10   groundwater mining and transport outside of the CDCA, that is currently not

11   lawful in the CDCA under the current provisions.

12       55.   Moreover, for all of the reasons listed in paragraph 39a above,

13   the Cadiz project should have been treated as a federal action under NEPA

14   triggering the need for a CDCA plan amendment under FLPMA.

15       56. The requested amount of water per year, 150,000 acre feet per year,

16   from under public lands should also constitutes a major federal action.   The

17   actual size of the pipeline and the applied for amount was not made clear to

18   the public in the EIR.   Federal intervention is warranted due to deceit and

19   intentional misleading description of the project as to the actual nature of

20   the project provided the public.   Especially egregious is the correspondence

21   that went out to pertinent domestic dependent Native American Tribes

22   representing that the project was a water "conservation" project. Necessary

23   is nation-to-nation and government-to-government consultation with these

24   tribes and tribal trusts whose traditional cultural places will be impacted

25   by this project.

26       57.   Plaintiff challenges defendants' attempt to circumvent the plan

27   amendment process by deceptive description of the proposed project and its

28   impact upon federal properties both real and cultural/historic properties.

1   Clearly, no provision has been made for water mining nor does this use fit
2   into the criteria for the current "use element" for the use area in which the
3   project is located, otherwise a plan amendment would not have been sought in
4   2002 when the previous version of the same project was proposed.

5       58.  Plaintiff alleges as fact the following events and actions:

6       59.  In 1976, Congress passed the Federal Land Policy and Management
7   Act (FLPMA) (Pub. L. 94-579, Title I, Sec. 601 et. seq. Oct. 21, 1976, 90
8   Stat. 2744.)  43 U.S.C. Sec.1701, et. seq., a law to direct the management of
9   the public lands of the United States.

10      60. Section 601(d) of FLPMA (43 U.S.C. Sec. 1781 (d)) designated a
11  special area called the California Desert Conservation Area (herein "CDCA"),
12  and provided specific direction to the BLM to provide a Plan for the
13  management of the CDCA.  Through the preparation and implementation of a
14  comprehensive long range management plan for the CDCA, it was Congress'
15  intent to "…provide for the immediate and future protection and
16  administration of the public lands in the California Desert within the
17  framework of a program of multiple use and sustained yield, and the
18  maintenance of environmental quality" and "not to consider necessarily the
19  combination of uses that will give the greatest economic return."

20      61.  As per FLPMA, a plan for theCDCA was prepared and approved by
21  Congress in 1980 and is called the "California Desert Conservation Area
22  Management Plan" (herein, "Desert Plan").

23      62.  In developing the Desert Plan,specific uses ("elements") of the
24  CDCA were identified which were considered compatible with the principles
25  defined above.  Where uses of the CDCA, not provided for in theDesert Plan,
26  are proposed, the Desert Plan specifically requires that a "Desert Plan
27  Amendment" be processed and a specific process is outlined in the Desert Plan
28  for amending a particular "element" or "use."  An approved Amendment to the

RiverAHA v. SALAZAR ET AL.

1  Desert Plan must be predicated by an Environmental Assessment or
2  Environmental Impact Statement in accordance with the National Environmental
3  Policy Act (herein "NEPA") and the Administrative Procedures Act (herein
4  "APA").

5      63.   Further, suitable areas were delineated for the specific elements
6  (ur uses) of the CDCA which were deemed to be compatible with the principles
7  defined above.  The California Desert was divided into "multiple use class"
8  areas of "intensive use," "moderate use," "liminted use," and "wilderness
9  areas," each of which are managed under its own particular "multiple use
10 class" "guidelines."

11     64.   The Desert Plan makes no provision for water mining in the use
12 area governing the APE or any other use area.  No areas within the CDCA were
13 studied by defendants or defendant agencies using their own expertise or data
14 base (independent of the project proponent, real parties of interest) to
15 develop criteria for siting a water mining element area within the CDCA or to
16 evaluate the overall suitability of public lands within the CDCA for water
17 mining.

18     65.   Not withstanding the failure to conduct site suitability studies
19 and analysis, the Secretary of Interior, Ken Salazar, the USDI, the BLM, the
20 County and the County Board of Supervisors have all had knowledge since
21 around 2008 that the CDCA, particularly the Bristol, Cadiz, Fenner and
22 Lanfair Valleys were being focused upon for water mining purposes by the
23 Cadiz Corporation as evidenced by applications,  and other communications as
24 Plaintiff believes can be shown now and through discovery.

25     64.   Further, it was never disclosed to the public by any notice that
26 the public had the due process right to comment and participate in
27 determinations with regard to siting criteria, site suitability and disposal
28 methodology for water mining in the California Desert Conservation Area.

RiverAHA v. SALAZAR ET AL.

1    65. Defendants have instead portrayed the proposed project as one

2    situated entirely on private land or exempted land that would not impact

3    public land, public property or public use. Since the first rendition of the

4    Cadiz project around 1998 or 1999, the Defendants/Respondents could have but

5    failed in their obligation, authority and responsibility to develop siting

6    criteria, to conduct site suitability studies and to engage the public in the

7    site selection process with respect to determining which public land, if any.

8    66. When the BLM and USDI furnishes guidance, participates in the

9    preparation of or by virtue of its silence, sanctions enivonmental documents

10   of any kind pertaining to water mining in the CDCA, they are in effecgt

11   bypassing the California Desert Plan, if they do so without first processing

12   a general Desert Plan Amendment addressing this issue. Having done so,

13   Defendants have, in effect, suppressed and bypassed the federally required

14   "siting criteria" and "site suitability" and "methodology" determinations to

15   be made a part of amending the Desert Plan to include a water mining and

16   transfer element. In circumventing these responsibilities, Defendants

17   prevented public input on these foundational issue and in effect made an

18   underlying, unwritten determination/decision without public involvement, that

19   the CDCA, in general, is suitable for water mining and tranfer via private

20   parties.

21   67. By misleading the public to believe that the development of siting

22   criteria, determining site suitability and selecting sites on public land in

23   the CDCA for the purpose of water mining and transfer was not a function of

24   the BLM or USDI, the public was denied the due process which would have been

25   afforded by completing a Category 2 Plan Amendment for the new use "water

26   mining and transfer." By obscuring the need for a Plan Amendment, defendant

27   Salazar also concealed theneed for BLM expert testimony and data and for

28

PETITION FOR INJUNCTION, WRIT OF MANDATE PURSUANT TO SEC. 106 OF NHPA AND FLPMA - 30

1  public debate, hearing and testimony, which would have been afforded by

2  virtue of the plan amendment process itself.

3     68.   Due to defendants' knowing and conscious disregard for the law and

4  applicable statutes, executive orders and regulations, as set forth herein,

5  plaintiff ahs suffered a legal wrong and is adversely affected and aggrieved

6  by Defendants' actions within the meaning of the Administrative Procedure

7  Act, 5 U.S.C. Sec. 702.   Plaintiff has no adequate remedy at law.

8  Irremediable damage will occur unless this court renders a decision enjoining

9  the illegal conduct.

10                          **Second Claim for Relief**

11          VIOLATION OF THE FEDERAL LAND POLICY AND MANAGEMENT ACT

12     69.   Plaintiff realleges, as if set forth in fullherein, each and every

13  allegation contained in paragraphs 54 through 68 inclusive.

14     70.   Defendant Agencies BLM, USDI are required to complete a Plan

15  Amendment prior to allowing uses of the CDCA not provided for by the Desert

16  Plan; Defendants actions are inconsistent with Section 601(b) of FLMPA, 43

17  U.S.C.Sec. 1781, requiring that defendants "to provide for maintenance of

18  environmental quality" in the CDCA.

19     71.   Defendants violated Plaintiffs right to due process in actions

20  required under the authority of FLPMA and NEPA by omitting to make provisions

21  for water mining and transfer in the Desert Plan or to complete a Category 2

22  Desert Plan Amendment.

23     72.   Plaintiff further alleges as material fact that had the BLM

24  completed a Category 2 Plan Amendment as required to amend a water

25  mining/transfer element to the Desert Plan, a material difference would have

26  resulted in the outcome of events which has resulted in considerable public

27  and private expense and wide public concern and consternation, while the

28  County engages in an effort to process a County permit for water

1 mining/transfer in the CDCA, which application was made by the Cadiz
2 Corporation.

3 **FACTS PERTINENT TO BOTH CLAIMS FOR RELIEF**

4      68.   Plaintiff filed comments with Defendant USDI/Secretary of the
5 Interior and requested information on numerous occasions but has not been
6 ignored to date.  About 300 others have signed Plaintiff's petition sent to
7 Defendants including Salazar and the highest administrative level, the
8 President of the United States, asking for federal review.  Plaintiff has
9 appealed to local, state and Congressional Representatives.  She has objected
10 to commented, presented petitions, attended meetings in Joshua Tree, CA,
11 Santa Margarita, CA,  traveling extraordinary distances to put her strong
12 concerns on the record including a trip to Santa Monica, California to
13 beseech Senator Feinstein to intervene, which Feinstein attempted to do
14 apparently with no avail an no response from Salazar.  Given the short
15 comment period and time limitations, Plaintiff has taken extraordinary steps
16 to exhaust her administrative remedies all without relief.

17

18 **Request for Relief**

19 WHEREFORE, Petitioner and Plaintiff Ruth Musser-Lopez, individually and for
20 RiverAHA, prays for relief as follows:

21 1. For a writ of mandate:

22 a. Directing Respondents, and each of them, to rescind or set aside their
23 approval and certification of the EIR, their adoption of the Resolution
24 approving such EIR, and all other approvals, if any, of the Project;

25 b. Commanding Respondents, each of them, and their agents to comply with
26 their mandatory duties under Section 106 of NHPA, FLPMA, NEPA, CEQA and all
27 other applicable environmental rules, regulations and procedures;

28 c. Commanding Respondents, and each of them, and their agents to immediately

1   suspend all activities in furtherance or implementation of the Cadiz Project,

2   until such time as a proper federal environmental review has been completed;

3   and

4   2. For a preliminary and permanent injunction against Respondents, enjoining

5   and restraining each named defendant and their agents, servants, employees

6   and those acting in concert with them from preparing, processing and/or

7   issuing further applications (including but not limited to withdrawal orders,

8   temporary use permits, rights-of-way and transfers of land) for purposes of

9   enabling the Cadiz Project and, or use of public land within the CDCA for

10  purposes related to water mining in the CDCA prior to the trial of this case

11  and until such time as Respondents comply with their mandatory duties under

12  Section 106 of NHPA, FLPMA, NEPA, CEQA and all other applicable environmental

13  rules, regulations and procedures;

14  3.   The court is asked to hold unlawful and set aside activities related to

15  water mining and transfer in the CDCA and find that the processing of

16  applications are (a) arbitrary, capricious, an abuse of discretion, or

17  otherwise not in accordance with law; (b) in excess of statutory

18  jurisdiction, authority, or limitations, or short of statutory right; (c)

19  without observance of procedure required by law.

20  4.   The court is asked to find and declare that a) the intent of FLPMA and

21  the Desert Plan was to restrict use of the CDCA to only those elements of

22  uses identified in the Desert Plan, either as it presently exists or by Plan

23  Amendment;   the Department of the Interior must comply with federal law by

24  processing a Category 2 Plan Amendment to the "California Desert Plan,"

25  (CDCA) pursuant to FLPMA to make a determination as to the suitability of

26  lands within the CDCA for use as a "water mining and transfer element." b)

27  the USDI and BLM is required by FLPMA and the Desert Plan to develop their

28  own criteria for determining suitability of public lands within the CDCA for

1    various purposes including water mining and transfer and to use its
2    independent expertise and data in an effort to examine the suitability of the
3    CDCA for use for the extraction of public water resources for transfer out of
4    the CDCA for the purpose of private sale; c) to find that the definition of
5    water "conservation" and "recovery" as used by the Defendants and Real
6    Parties of Interest circumvents due process by inadequately describing the
7    project as it relates to water mining and sale thereby denying the citizens
8    and local governments potentially affected by this project their right to
9    participate in the decision making process.

10

11   3. For an award of Plaintiff's costs, dispursements, reasonable attorney fees
12   and litigation expenses, including without limitation attorneys' fees,
13   incurred herein as permitted or required by law under 42 U.S.C. Sec. 1988 the
14   Equal Access to Justice Act, 28 U.S.C. Sec. 2412(d)(1)(A), and California
15   Code of Civil Procedure Sec. 1021.5; and

16   4. For such other relief as the Court deems just and proper.

17

18                                        Dated this 30th day of August, 2012

19

20

21                                        Ruth Musser-Lopez, pro per
                                          San Bernardino County, CA
22

23

24

25

26

27

28


PETITION FOR INJUNCTION, WRIT OF MANDATE PURSUANT TO SEC. 106 OF NHPA AND FLPMA - 34

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Margaret M. Morrow and the assigned discovery Magistrate Judge is Michael Wilner.

The case number on all documents filed with the Court should read as follows:

## EDCV12- 1471 MMM (MRWx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [ ] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**I (a) PLAINTIFFS** (Check box if you are representing yourself ☑)
RUTH ARLENE MUSSER-LOPEZ, in pro per
individually and doing business as
ARCHAEOLOGICAL HERITAGE ASSOCIATION ( "RiverAHA")

**DEFENDANTS**
Ken Salazar, SECRETARY OF THE INTERIOR; USDI (USDI); BUREAU OF
LAND MANGEMENT-CSO; COUNTY OF SAN BERNARDINO, COUNTY
OF SAN BERNARDINO, BOARD OF SUPERVISORS; (See attached).

**(b)** Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.)

RiverAHA
420 E Street, Needles, CA 92363
760/885-9374

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff  ☐ 3 Federal Question (U.S. Government Not a Party)

☑ 2 U.S. Government Defendant  ☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☑ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☑ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☑ No  ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
PETITION FOR WRIT OF MANDATE AND COMPLAINT FOR DECLARATORY RELIEF 36 C.F.R. § 800.2(b) (1995), 43 U.S.C. §1701  et. seq 42 U.S.C. §4321 et.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE / PENALTY** | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 830 Patent ☐ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 861 HIA (1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW (405(g)) |
| ☑ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | ☐ 446 American with Disabilities - Other | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| | ☐ 240 Torts to Land | | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 950 Constitutionality of State Statutes | ☐ 245 Tort Product Liability | | | | |
| | ☐ 290 All Other Real Property | | | | |

**ED CV 12 - 01471** MMM MRW

**FOR OFFICE USE ONLY:** Case Number: _____

AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.    AUG 30 2012

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply) ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
☐ Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County | |

(b) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
☐ Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County | Los Angeles County, Orange County, Sacramento, California Washington, D. C. |

(c) List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
   **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| San Bernardino County | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X. SIGNATURE OF ATTORNEY (OR PRO PER): _____ Date August 30, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

# UNITED STATES DISTRICT COURT

for the

Central District of California

"*River AHA*" —
RUTH MUSSER-LOPEZ, in pro per
individually and doing business as
ARCHAEOLOGICAL HERITAGE ASSOCIATION,
River Branch;

*Plaintiff(s)*

v.

KEN SALAZAR, SECRETARY OF THE UNITED
STATES DEPARTMENT OF THE INTERIOR
(USDI);

*Defendant(s)*

)
)
)
)
)
)
)
)
)
)
)

Civil Action No. **ED CV 12 01471**

MMM

MRWx

## SUMMONS IN A CIVIL ACTION

To: *(Defendant's name and address)*

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:      RUTH MUSSER-LOPEZ
420 E Street
Needles, CA 92363
(760) 885-9374

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

TERRY NAFISI

*CLERK OF COURT*

Date: _____AUG 30 2012____

L. MORRAY
*Signature of Clerk or Deputy Clerk*

(1134)

FOR OFFICE USE ONLY

1 | RUTH ARLENE MUSSER-LOPEZ, in pro per
individually and doing business as
2 | ARCHAEOLOGICAL HERITAGE ASSOCIATION,
River Branch. Short title "RiverAHA"
3 | 420 E Street
Needles, CA 92363
4 | 760/885-9374  *NO FAX*
  *Office @ River AHA.Com*
5 |

6 |                 IN THE UNITED STATES DISTRICT COURT

7 |                   CENTRAL DISTRICT OF CALIFORNIA

8 |
   "RiverAHA" – RUTH ~~ARLENE~~ MUSSER-        ) Case No.:
9 | LOPEZ, in pro per individually and         )
   doing business as ARCHAEOLOGICAL          ) PETITION FOR WRIT OF MANDATE
10 | HERITAGE ASSOCIATION, River Branch,        ) AND COMPLAINT FOR DECLARATORY RELIEF
              Plaintiff,                      ) 36 C.F.R. § 800.2(b) (1995),
11 |                                            ) 16 U.S.C. § 470w(7)(D) (1994),
   v.                                        ) 43 U.S.C. §1701   et. seq
12 |                                            ) 42 U.S.C. §4321 et.seq.
   Ken Salazar, SECRETARY OF THE UNITED      ) and 5 U.S.C. §701-706
13 | STATES DEPARTMENT OF THE INTERIOR;         ) (C.C.P. §§ 1085 and 526; Pub.
   UNITED STATES DEPARTMENT OF THE           ) Res. Code § 21168.5; Article 5 of the
14 | INTERIOR (USDI); BUREAU OF LAND           ) San Bernardino County Code of
   MANAGEMENT (BLM-CSO); COUNTY OF SAN       ) Ordinances)
15 | BERNARDINO; COUNTY OF SAN BERNARDINO       )
   BOARD OF SUPERVISORS; and DOES 1          )
16 | through 50, inclusive,                     ) Assigned for all purposes to:
                                             )
17 |           Respondents/Defendants          ) Judge
                                             )
18 | SANTA MARGARITA WATER DISTRICT, a          ) Dept:
   California Water District; CADIZ,         )
19 | INC., a Delaware Corporation; and         ) Related Cases: DELAWARE TETRA
   FENNER VALLEY MUTUAL WATER COMPANY, a     ) TECHNOLOGIES,INC., a Delaware
20 | California nonprofit mutual benefit       ) Corporation, Petitioner/Plaintiff,
   corporation; and ROES 51 through         ) VS. COUNTY OF SAN BERNARDINO; COUNTY
21 | 60, inclusive                             ) OF SAN BERNARDINO BOARD OF
                                             ) SUPERVISORS
22 |        Real Parties in Interest           )
   _____ )

23 |

24 |        This  Petition  for  Peremptory  Writ  of  Mandate  and  Complaint  for

25 | Declaratory  Relief  ("Petition")  is  brought  by  Petitioner/Plaintiff  Ruth

26 | Musser-Lopez,  individually  and  doing  business  as  the  Archaeological  Heritage

27 | Association,  River  Branch  (herein  "RiverAHA"),   based  on  Section  106  of  the

28 | National  Historic  Preservation  Act  of  1966  as  amended,  the  Federal  Land

Policy  and  Management  Act  (herein,  "FLPMA"),  43  U.S.C.  Sec.  1701  et  seq.,  the

1                                           Service List

2

KEN SALAZAR, SECRETARY OF THE INTERIOR
3   1849 C Street, NW
Washington, D.C.

4
UNITED STATES DEPARTMENT OF THE INTERIOR/BLM
Civil Process Clerk
5   1400 U.S. Courthouse
312 N. Spring Street
6   Los Angeles, CA 90012

7   UNITED STATES DEPARTMENT OF THE INTERIOR/BLM
Donald B. Verilli, Jr.
8   United States Attorney General
U.S.Departmentof Justice
950 Pennsylvania Avenue, NW
9   Washington, DC 20530-0001

10   UNITED STATES DEPARTMENT OF THE INTERIOR/BLM/CSO
California State Office
11   2800 Cottage Way, Suite W-1623
Sacramento, CA 95825-1889

12
COUNTY OF SAN BERNARDINO
13   385 North Arrowhead Avenue
San Bernardino, CA

14
BOARD OF SUPERVISORS
COUNTY OF SAN BERNARDINO
15   c/o Clerk of the Board
385 North Arrowhead Ave.
16   San Bernardino, CA

17   SANTA MARGARITA WATER DISTRICT
Santa Margarita Water District Administration Office
26111 Antonio Parkway
18   Rancho Santa Margarita, CA 92688

19   CADIZ, INC.
550 South Hope Street
20   Suite 2850
Los Angeles, CA 90071

21
FENNER VALLEY MUTUAL WTAER COMPANY
550 South Hope Street
22   Suite 2850
Los Angeles, CA 90071

23

24

25

26

27

28

                              [Summary of pleading] - 1

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____

_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____

_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____

_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .


I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*


_____
*Server's address*

Additional information regarding attempted service, etc: